This is an action in damages resulting from an intersectional collision of automobiles. Plaintiffs are Askew Caldwell, a passenger in one of the cars, and Louis Hankins, father of the minor, Elderia Hankins, also a passenger in one of the automobiles. The defendants are Sam Thomas, driver of the car in which Caldwell and the Hankins girl were passengers, Annie Mae Guinn, driver of the other car involved in the accident, and the Unity Industrial Life Insurance Company, by whom the Guinn woman was employed as an agent and solicitor.
The accident occurred about 5:30 P.M. on December 14, 1941, at the intersection of two black top roads in Caddo Parish known as the Gilliam-Dixie Road and the Belcher-Oil City Road. At the time a Buick Tudor Sedan, belonging to and operated by Sam Thomas, was proceeding in a southerly direction, and a Ford car driven by the defendant, Annie Mae Guinn, was traveling in a westerly direction. The facts show that the two cars arrived at the intersection at approximately the same time, but the preponderance of the testimony indicates that the Thomas car first entered the intersection, and was struck at a point about the center of the left-hand side of the car by the front or right front of the Ford automobile. The Buick car was turned over one or more times and *Page 758 
came to rest some distance down the road past the intersection, bottom up.
All the parties involved in the accident were negroes. The Buick car was occupied by six adults and three children. Plaintiff Caldwell and another man occupied the front seat of the Buick car with the driver Thomas, and the back seat was occupied by Elderia Hankins, three other grown women, one small child and two infants. As the result of the accident, plaintiff Caldwell sustained severe bruises and lacerations of the face, one or more broken ribs, and bodily bruises. Elderia Hankins suffered a compound fracture of the leg, and her infant illegitimate child, about two months of age, was killed. The action seeks damages for the injuries set forth.
The record discloses the usual conflict of testimony of the numerous witnesses for plaintiff and defendant as to the actual occurrence of the accident, but the district judge briefly and plainly disposed of the cause of the accident in written opinion, fixing the negligence of defendant Annie Mae Guinn as the cause thereof. There was judgment in favor of the plaintiff Askew Caldwell against the defendant Annie Mae Guinn in the sum of $672, and in favor of the plaintiff Louis Hankins for the use and benefit of his minor daughter, Elderia Hankins, against the defendant Annie Mae Guinn, in the sum of $1,508. The demands of plaintiffs against the other defendants, Sam Thomas, and Unity Industrial Life Insurance Company, were rejected.
From this judgment plaintiffs appeal. The principal purpose of the appeal is the attempt to fix liability upon the defendant insurance company as employer of the defendant Guinn, on the ground that the said defendant Guinn at the time of the accident was acting within the course and scope of her employment. This is the principal issue tendered by the appeal. While some perfunctory argument is made, on behalf of appellants, seeking amendment of the judgment to establish liability against Thomas, no substantial grounds of complaint or error with regard to this point are raised on behalf of appellants. Practically the entire argument of counsel for appellants is directed toward the question of the showing of liability on the part of the defendant insurance company.
It is established that the automobile driven by the Guinn woman was her personal property, and that she paid the operating expenses of the same. She was employed as an agent by the defendant insurance company, her duties being to sell policies of insurance and collect the premiums or dues on said policies. Her territory embraced the northern part of Caddo Parish including the vicinity in which the accident occurred. A number of policyholders lived near and about the scene of the accident, and from these policyholders the defendant Guinn was accustomed to make collection of dues at various times. It is contended on behalf of plaintiffs that on Sunday, December 14, 1941, the day of the accident, the defendant, Guinn, accompanied by one Solomon Ford, also an employee of the defendant insurance company, made the trip from Shreveport in a northerly direction through the communities of Oil City, Belcher, and others, for the purpose of collecting premiums on policies, and that during the day, prior to the time of the accident, the defendant Guinn had collected premiums from a number of policyholders and intended to continue this work of collection during the afternoon and evening, which plan, however, was interfered with by the accident.
To the contrary, the defendant Guinn repeatedly denied that the trip on which she was engaged at the time of the accident was in anywise connected with her employment as agent of the defendant insurance company. She asserted that the primary purpose of the trip was designed to the end of purchasing a Christmas turkey from one Charley Williams, who lived on a plantation near Belcher. The turkey was to be purchased by Guinn's companion, Solomon Ford, as a gift for his mother. It is established that defendant Guinn and her companion actually visited Charley Williams at his home, and, negotiations for the purchase of the turkey being unsuccessful, they were on the return trip at the time of the accident. Defendant Guinn testified that she intended to return to Shreveport by way of Superior, Louisiana, where she was to pick up her young daughter, Velma McMillan, who had spent Saturday night and Sunday with friends at this point.
Determination of the question of law involved in the case must depend upon the finding of facts as to whether the defendant Guinn, in the course of the journey upon which she was engaged, was acting in the course and scope of her employment, *Page 759 
and, if so, whether, having turned aside from the duties of that employment and engaged on a mission of her own, she had re-entered upon the business of her employer and was pursuing same at the time of the accident.
On this point the learned judge of the district court made the following statements in his written opinion:
"From all the evidence in the case it is not possible to hold the Insurance Company liable in this case. It is my opinion that Annie Mae Guinn and Solomon Ford, another employee, were on business for the company some of the time during that Sunday afternoon and that they tried to collect some premiums, and also that she was showing Ford the territory she worked. No other reasonable conclusion can be reached. The circuitous route they took to go to Charley Williams' to see about the turkey leads to that conclusion. But Annie Mae Guinn also intended to go after her 14 year old daughter who had spent Saturday night with friends at Superior, and her testimony and that of Ford, is to the effect that they were on the way to Superior for the child at the time of the accident, so that, if they were originally on business for the company, they had, so far as the record shows, finished that business and Annie Mae was on a mission of her own. She was the owner of the car and furnished the expense of its operation, and when she finished whatever business she was on for her employer and started on a mission of her own she was not engaged on any business for the company."
While we are not entirely in accord with our brother of the district court as to the fact that the record unalterably leads to the conclusion that defendant Guinn and her companion had transacted business for the company that afternoon, it is not necessary to discuss in detail this issue in view of our determination of the question on other grounds.
In our opinion plaintiffs have utterly failed to establish the fact that the defendant Guinn, at the time of the accident, was engaged on the business of her employer; that she had returned from the completion of a personal mission, re-entered upon her duties as an employee of the defendant insurance company, or even that she intended to re-enter upon these duties at or about the time of the accident.
We find it is definitely established, whatever may have been the activities of defendant Guinn in the interest of her employer during the earlier portion of her trip, that she had severed herself from further performance of those duties and entered upon a personal mission, namely the endeavor to purchase a turkey from Charley Williams, which mission was to be followed by another personal enterprise, in which she was to call by Superior, Louisiana, for her 14-year old daughter for the purpose of bringing her home to Shreveport. There is nothing in the testimony of the witnesses, which we have carefully examined, that would cast any serious doubt upon defendant Guinn's good faith in these intentions and purposes. As a matter of fact, plaintiffs have failed to definitely establish, by the best evidence available, the fact that defendant Guinn had been engaged, on the Sunday in question, in collecting premiums. In connection with this point, and in further support of our conclusion that plaintiffs failed to show defendant Guinn to have been engaged in the course and scope of her employment at the time of the accident, or to show that she proposed so to engage, to our minds there is a portion of the record that is significant.
The trial of this cause was concluded on April 8, 1942. On April 22, 1942, plaintiffs filed a motion to reopen. This motion alleged the existence of much additional and newly discovered evidence on the disputed point of defendant Guinn's activities in the course and scope of the business of her employer, the defendant insurance company. The motion alleged that the very trip for the purchase of the turkey was in the interest of the employer of defendant Guinn and her companion, Solomon Ford, and that upon reopening the case Charley Williams and several other witnesses would so testify. Further, it was alleged that several policyholders who had paid premiums to the defendant Guinn, on the particular trip during which the accident occurred, could be presented in court, and that receipt books showing the collection of premiums had been obtained. These allegations, together with other pertinent statements in the motion, if susceptible of proof, not only justified but dictated the reopening of the case in the interest of justice. The trial judge accordingly sustained the motion and ordered the case reopened, which action was taken on April 27, 1942. *Page 760 
From an examination of the minutes it appears that the case remained on the docket without further action until June 11, 1943, well more than a year from the time the order to reopen had been entered. From statements in briefs on behalf of defendant it further appears that the case was finally fixed on motion of defendants for June 11, 1943, at which time, on motion of counsel for plaintiff, the case was closed and continued for argument.
There is no need for speculation as to why the testimony alleged in the motion to reopen was not produced. The significant fact is that, without such testimony, plaintiffs have failed to establish, by a preponderance of the evidence, the facts upon which liability of the defendant insurance company must depend.
A recent case decided by this court, Williamson v. De Soto Wholesale Grocery Company, Inc., et al., 16 So.2d 739, 743, involved questions very similar to those presented by the instant case. In the opinion in the cited case we made the following observation:
"Once the deviation from the course and scope of their employer's business has been established, the burden of proof then shifts, and it becomes the duty of the plaintiff to establish a re-entry upon the employer's business. In this case the deviation has been established beyond question of a doubt but [the] plaintiff has failed to produce evidence which would justify a finding of re-entry."
In our opinion the above-quoted statement is precisely applicable to the instant case.
There remains only the question of quantum. The district court rejected claims of the plaintiff Hankins, based on the death of the illegitimate child of Elderia Hankins, and awarded the amount of $1,500 for the use and benefit of his 17-year old minor daughter, Elderia Hankins, on account of her injuries, which consisted of a compound fracture of the leg, together with the sum of $8 which was the only proven medical expense. Plaintiff Askew Caldwell was awarded $72, which amount was fixed as loss of compensation during six weeks' inability to work, and a sum of $600.00 as the measure of damages for injuries, consisting of fractured ribs, and a cut over the left eye about four inches in length, which resulted in a slightly disfiguring scar.
In our opinion the awards are entirely adequate, and we find no grounds for disturbing the amounts fixed by judgment of the trial court.
For the reasons assigned, the judgment appealed from is affirmed. *Page 835