GARRISON, Judge.
Plaintiffs filed this libel suit against the defendants based upon certain material published in the November 1978 issue of “Crescent City Fire Fighter”, a publication published by the New Orleans Fire Fighter’s Association Local 632 and edited by Clarence Perez, president and chief executive officer of the firefighter’s union in 1978. This material consisted of a cartoon depicting non-union members as “freeloaders” and listing seventeen non-union members including the plaintiffs. Additionally, a poem entitled “Freeloader” was printed next to the cartoon and in this poem, a non-union member was likened to a “fair weather friend” and a “leech on a toad” among other things.[1] The plaintiffs terminated their union membership in September of 1978 and this material was published in November of 1978.
In an opinion of this court dated January 10, 1980, a judgment granting the defendants’ exception of no cause of action was reversed and this case was remanded to the trial court for a trial on the merits. Corcoran v. New Orleans Fire Fighter’s Association Local 632, 379 So.2d 829 (La.App. 4th Cir.1980). Plaintiff Alvin H. Boquet did not appeal the trial court’s judgment; therefore, his dismissal by the trial court was final. After trial on the merits, the jury returned a verdict in favor of the plaintiffs and awarded each plaintiff $23,-000.00 in damages. Subsequent to this verdict, the defense moved for a judgment notwithstanding the verdict on behalf of Clarence Perez, individually, and on behalf of New Orleans Fire Fighter’s Association Local 632. The trial judge granted the motion for judgment notwithstanding the verdict as to Clarence Perez and he was dismissed from this lawsuit. However, the trial judge denied the motion for judgment notwithstanding the verdict as to the fire fighter’s union. The defendant then moved for remittitur of the amount of damages awarded to the plaintiffs. The award was remitted to $3,500.00 for each plaintiff and the jury’s verdict, as remitted, was made the judgment of the court. The defendant, New Orleans Fire Fighter’s Association Local 632, now appeals this judgment. The plaintiffs appeal the reduction of their damage award.
On appeal, the defendant contends that it was protected by First Amendment and labor policy privileges of the United States and the State of Louisiana in their publishing of an editorial cartoon and accompanying descriptive poem which allegedly defamed the plaintiffs. Specifically, the defendant claims that the description of certain named non-union members as “freeloaders” used in an organizing drive to achieve 100% union membership is sanctioned by the case of Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974).
Secondly, the defendant claims that the trial judge failed to independently review the facts to assure preservation of First Amendment and labor policy protections. According to the defendant, because this *650 case involved First Amendment privileges, the trial judge should have assumed the function of fact finder following defendant’s motion for judgment notwithstanding the verdict in order to insure the protected freedom of expression in labor relations.
Thirdly, the defendant claims that the plaintiffs failed to prove that they suffered any actual damages as a result of this publication. The defendant contends that the testimony indicates that both plaintiffs’ emotional damages were largely due to a prior pension plan guideline dispute which resulted in these members discontinuing their membership in the union. According to the defendant, these pension plan guidelines had nothing to do with this lawsuit and the plaintiffs have not proven any actual damages resulting from the publication of this cartoon and poem.
Finally, the defendant contends that the trial judge erred in not instructing the jury as to the newspaper privilege as delineated in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Because the labor policy privilege of Old Dominion, supra, is a separate and distinct policy of the newspaper privilege of New York Times, the defendant submits that the trial judge should have instructed the jury as to both privileges.
The essential elements of a defamation action are (1) defamatory words, (2) publication or communication to some person other than the one defamed, (3) falsity, (4) malice, actual or implied, and (5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980). The plaintiffs contend that all of these elements are present in this case and the defendant contends that the assertions in the publication are true and, alternatively, that any derogatory or exaggerated assertions are protected by privilege.
The case of Old Dominion Branch No. 496 v. Austin, supra is on point with the instant case. In that case, the appellees’ names were published in a “List of Scabs” in a union newsletter. The Supreme Court held that the newsletter’s use of the term “scab” in describing appellees was protected under federal labor law and could not be the basis of a state libel judgment in light of the fact that the use of this term was not a reckless or knowing falsehood. According to the Old Dominion case, any publication made during the course of union organizing efforts, which is arguably relevant to that organizational activity, is entitled to the protection of Linn v. Plant Guard Workers Local 114, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). The Linn case held that libel actions under state law are pre-empted by the federal labor laws to the extent that the State seeks to make actionable defamatory statements in labor disputes which were published without knowledge of their falsity or reckless disregard for the truth.
The ultimate test in a case such as this is that recovery can be permitted only if the defamatory publication was made “with knowledge that it was false or with reckless disregard of whether it was false or not.” Old Dominion, supra, citing New York Times Co. v. Sullivan, supra. Plaintiffs rely heavily on the exception to this rule stated in the Old Dominion case as follows:
“This is not to say that there might not be situations where the use of this writing or other similar rhetoric in a labor dispute could be actionable, particularly if some of its words were taken out of context and used in such a way as to convey a false representation of fact.” Old Dominion, 418 U.S. p. 286, 94 S.Ct. p. 2782.
Because this publication is otherwise protected under federal labor laws, it must be determined if false representations of fact were made in this case either knowingly or with reckless disregard for the truth. Plaintiffs contend that it was a false representation of fact for the publication to refer to them as “freeloaders” in light of the fact that they were both dues-paying union members up until two months prior to the publication of this allegedly defamatory material. They contend that they earned all of the benefits referred to in the cartoon *651 through their long-standing union membership.
However, both plaintiffs agreed at trial that following their resignation from the union, they continued to receive all of the benefits of union representation. Therefore, it appears that these men arguably fell within the common labor relations term of “freeloader”. At trial, a definition of “free rider” as stated in the 1976 edition of the United States Department of Labor Bicentennial History of the American Worker was offered into evidence. It defined a “free rider” as “a worker in the bargaining unit who refuses to join the union but accepts all the benefits negotiated by the union.” This definition additionally stated that this type of person is also called a “freeloader”. Therefore, it seems that the reference to plaintiffs as “freeloaders” in this publication was not necessarily a false representation of fact. Additionally, because this language was used in an organizational drive to achieve 100% union membership, it falls within the labor policy privileges afforded by the National Labor Relations Act, 29 U.S.C. Section 157.
For the reasons stated above, we reverse the trial court judgment granting recovery to plaintiffs. We take this action because not only are First Amendment rights involved in this case, but federal labor policy privileges are involved as well. The language used in the controversial cartoon and poem was protected under both of these privileges and cannot be viewed as a reckless or knowing falsehood in light of the evidence presented in this case.
In remitting the amount awarded by the jury to the plaintiffs, the trial judge only partially remedied the erroneous findings of the jury. The defendant’s motion for judgment notwithstanding the verdict should have been granted by the trial judge because the plaintiffs are not entitled to any recovery at all. Therefore, the plaintiffs’ action against New Orleans Fire Fighter’s Association Local 632 is hereby dismissed.
REVERSED.

*652

. A copy of page 9 of the November 1978 issue of Crescent City Fire Fighter is printed in the Appendix following this opinion.