454 So.2d 413 (1984)
Huey Allen FERGUSON, Thomas Huey Ferguson & Mrs. Thomas Huey Ferguson, Plaintiffs-Appellants,
v.
Don M. BURKETT, Defendant-Appellee.
No. 83-810.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1984.
Gordon, Bailey & Associates, Jack M. Bailey, and Walker, Feazel & Tooke, Barry G. Feazel, Shreveport, for plaintiffs-appellants.
Edward Chevallier, Many, Dewey E. Burchett, Jr. of Thomas & Burchett, Bossier City, for defendant-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
*414 DOUCET, Judge.
Plaintiffs, Huey Allen Ferguson and his parents Mr. & Mrs. Thomas Huey Ferguson, brought this action against an attorney, defendant Don M. Burkett, who represented Huey after he was involved in an automobile accident resulting in death to another driver. Huey was subsequently charged with negligent homicide. The Fergusons contend the condition of the highway contributed to the accident. Mr. Burkett acted as counsel for the Fergusons up until the date on which Huey was scheduled for a hearing whereupon Mr. Burkett allegedly informed plaintiffs he wished to be relieved of representation responsibility and suggested Huey plead guilty to the charge. Pursuant to counsel's advice, Huey pled guilty and was sentenced to one year imprisonment.
Thereafter, plaintiffs aver, Mr. Burkett turned his attention to representation of the surviving widow and children of the victim of the accident. The plaintiffs responded to Burkett's change of allegiance by filing suit against him seeking damages claimed to have arisen from the attorney's failure to pursue a cause of action against the State as custodian of highways, since prescribed, and, additionally, damages were sought by the parents for loss of consortium of their son.
Plaintiffs' allegations against defendant are summarized in their petition as follows:
"A. Failing to preserve evidence for the defense of his client against possible criminal charges and/or the prosecution of his civil action;
B. Failing to give his individual allegiance to his client after having been retained by him and after having received his confidence;
C. Permitting the disclosure of and the wrongful use of confidential information conveyed to him by his client in consideration of the privileged attorney-client relationship;
D. In acting for both his client, HUEY ALLEN FERGUSON, and for another whose interest was adverse to or conflicting with that of HUEY ALLEN FERGUSON in the same matter;
E. Failing to meet the standards of professional expertise as required by the circumstances of his legal representation of HUEY ALLEN FERGUSON;
F. Failing to properly apprise his client to his rights of a civil action;
G. Failing to have the best interest of his client, HUEY ALLEN FERGUSON, in mind when advising him to plead guilty to a charge of negligent homicide;
H. Failing to preserve the rights of his client to a civil action by interrupting prescription of that right;
I. Failing to advise his client of his probable defenses to a negligent homicide charge.
J. Failing to exercise his duty of reasonable care, ordinary skill, and knowledge in the conduct of his client's affairs."
Your petitioners allege that as a result of the fault of the petitioners, Mr. and Mrs. Thomas Huey Ferguson, itemized their damages as follows:

"A. Loss of Love $10,000.00
 B. Loss of companionship $10,000.00
 C. Loss of affection $10,000.00
 D. Loss of society $10,000.00
 E. Loss of comfort $10,000.00
 F. Loss of solace $10,000.00
 G. Loss of services $10,000.00
 __________
 Total Damages $70,000.00"

Appellants made no claim for damages directly resulting from breach of contract. Instead, they made only tort claims for loss of consortium.
The defendant responded with an Exception of No Cause and No Right of Action vis-a-vis the parents claim. The trial court found the parents had no legally recognizable claim for loss of consortium of their incarcerated, major son and the exceptions were sustained. The parents now appeal.
Appellants assign the following specifications of error:

*415 1. The trial court made a manifest error in failing to recognize the right of plaintiffs, THOMAS HUEY FERGUSON and MRS. THOMAS HUEY FERGUSON, to a cause of action under Article 2315 for loss of consortium.
2. The trial court made a manifest error in deciding that because the substance of Act 202 of the 1982 Legislature was added to Article 2315 in a separate paragraph, it provided a "new" right to recovery.
3. The trial court made a manifest error in deciding to refuse to allow plaintiffs/appellants' claim to be heard on the grounds that to do so might cause other claims to be fraudulently brought.
4. The trial court erred in failing to make retroactive application of Act 202 of the 1982 Louisiana Legislature on the grounds that the legislature did not specifically provide for retroactive application.
5. The trial court erred in placing the rights of a "private-citizen tort offender" above the rights of the victim of the tort.
The trial judge addressed all of the issues raised by appellants in his thorough opinion on the exception, which we incorporate herein below as our own:
"Defendant herein, Don M. Burkett, has filed Exceptions herein, contending that the petition herein disclosed no cause of action on the part of plaintiff, Thomas Huey Ferguson and Mrs. Thomas Huey Ferguson, parents of their co-plaintiff, Huey Allen Ferguson; and, that said Thomas Huey Ferguson and wife have no right of action in the present cause against defendant.
"The basis of all the plaintiffs' claims herein is the alleged legal malpractice of the defendant in his representation of plaintiff, Huey Allen Ferguson, in connection with a criminal, negligent homicide proceedings; and, in the undertaking by the defendant to also represent certain survivors of the victim of the alleged negligent homicide in a subsequent civil proceeding against Huey Allen Ferguson for damages. Plaintiff, Huey Allen Ferguson, allegedly on the advice of the defendant, pled guilty to negligent homicide and was subsequently given a suspended sentence and placed on supervised probation for five (5) years, with a special condition of probation that he serve one year in the Sabine Parish Jail, commencing March 15, 1982. The petition herein does not allege the status or outcome of the civil suit against Huey Allen Ferguson and there is nothing in the record about that suit, except plaintiffs' allegation in their petition that the suit was filed and served upon plaintiff, Huey Allen Ferguson.
"The damages claimed by Thomas Huey Ferguson and wife are set forth in Paragraph XXXV. of the Petition herein. In essence, they claim damages in the total amount of Seventy Thousand and 00/100 ($70,000.00) Dollars for loss of consortium with their son, due to the injuries and damages allegedly suffered by their son and co-plaintiff as an alleged result of the alleged legal malpractice of defendant. They claim Ten Thousand and 00/100 ($10,000.00) Dollars each for loss of love, companionship, affection, society, comfort, solace, and, services.
"In response to defendant's contentions that the said plaintiffs have no cause and no right of action for the damages they claim, plaintiffs' counsel contend that although Mr. and Mrs. Thomas Huey Ferguson had no cause or right of action for loss of consortium damages at the time the alleged legal malpractice occurred, they were granted such a cause of action, retroactively, by the 1982 legislative amendment to Article 2315 of the Louisiana Civil Code of 1870, which amendment became effective on September 10, 1982.... Defendant's counsel, however, takes the position that, even after the said amendment to Article 2315 of the Civil Code, there is no cause of action for loss of consortium in Louisiana, except in wrongful death cases....
"The relevant parts of the amended Article 2315 of the Civil Code are as follows:
`Art. 2315: Every act whatever of man that causes damages to another obliges *416 him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person

. . . .
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of:
(1) ...; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or died surviving; and (3) .... The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased." (See Article 2315, Louisiana Civil Code of 1870, West's LSA Civil Code, Vol. 8A, 1983 Pocket Part, Page 9.).'
"Prior to the 1982 amendment, Article 2315 did not contain the present second paragraph of the article, dealing with damages for loss of consortium. (See Article 2315, Louisiana Civil Code of 1870, West's LSA Civil Code, Vol. 8A, Page 101.).
"The jurisprudence prior to the 1982 amendment of Article 2315 of the Civil Code allowed recovery of consortium damages under that article only in an action for the wrongful death of a tort victim. (See Bourque v. American Mutual Liability Insurance, Co., 345 So.2d 237, La. 3rd Cir.Ct. of App.1977; and, Cases cited with approval therein.). The new provision for consortium damages in Article 2315 does not state that recovery of such damages is restricted to wrongful death cases. It does define the relationship the claimants of consortium damages must have to the tort victim by providing that those persons who could have recovered for the tort victim's wrongful death, had he died, have the right to recover consortium damages. (See Article 2315, as amended in 1982, cited supra.). However, the consortium provision is set forth in a separate paragraph from the wrongful death provisions of the article. Therefore, the consortium provision, added by the 1982 amendment to the article, creates, defines, and regulates, in my view, a new right of recovery for certain relations of a tort victim who does not die from his injuries, and does not, as defendant's counsel contends, merely codify the pre-amendment jurisprudence allowing recovery of consortium damages under Article 2315.
"Plaintiff's counsel base their contention that the 1982 amendment to Article 2315 of the Civil Code should be given retroactive application in this case on their classification of the amendment as "interpretive", "curative"; and, "procedural" law. The amendment is interpretive, they contend, since, historically, Article 2315 contained no definition or interpretation of the word "damages" as used therein and the early jurisprudence incorrectly interpreted damages in Article 2315 as excluding consortium type damages. However, I have reviewed the landmark case denying a claim for loss of consortium and find that the majority of the court in that case established, in my judgment, a substantive rule of law. Moreover the majority opinion in that case did not engage in any interpretation of the word "damages" in Article 2315, but rather they were concerned with certain policy considerations, such as their concern that allowing consortium damages would encourage vindictive and penal damage awards and the likelihood that a defendant's liability would be greater or less in proportion to the size of the circle of friends of the tort victim whose friends have been offended by the victim's injuries. (See Black v. Carrolton Railroad Co., 10 La.Ann. 33, 1855.). Similar policy considerations are stated in Bourque v. American Mutual Liability Insurance Co., 345 So.2d 237, La. 3rd Cir.Ct. of App., 1977; and, in the cases cited with approval therein. Moreover, the previous amendment to Article 2315 allowing the major children of their decedent mother to recover damages *417 for her wrongful death was found to be a substantive law change and, therefore, was not applied retrospectively in Manuel v. Carolina Casualty Insurance Company, 136 So.2d 275, La. 3rd Cir.Ct. of App., 1961. This amendment to Article 2315 creates, defines, and regulates rights to the same extent, in my view, as the Article 2315 amendment dealt with in that case did. Similarly, restrictions on the rights granted in Article 2315 by the workmen's compensation statutes has been recognized as substantive law changes. (See Bostick v. International Minerals & Chemical Corp., 360 So.2d 898, La. 2d Cir.Ct. of App., 1978; Cases cited therein; and, Article 8, Louisiana Civil Code of 1870.).
"A legislative act may specifically provide for retroactive application and thus be an exception to the general rule that a statute cannot have retrospective application. (See Bostick v. International Minerals and Chemical Corp., cited supra.). However, the amending act herein makes no provision for its retroactive application.
"The court in the Bostick Case, cited supra, found that a legislative act can be curative and remedial, yet be a substantive law. Thus, even if the legislative amendment herein be curative or remedial in the sense that a bad public policy (denial of rights to consortium damages for injuries to a living tort victim) has been eliminated or changed it is no less a substantive law, since it does add to the rights and causes of actions granted by Article 2315.
"In Fullilove v. U.S. Casulaty (sic) Company of New York, 129 So.2d 816, La.2d Cir.Ct. of App., 1961, cited by counsel for plaintiffs, the court was dealing with a constitutional amendment, waiving the sovereign immunity of this state. As stated therein, a constitutional amendment, whether substantive or procedural, is almost always applied retroactively. A legislative act, however, is not, as a general rule, afforded such treatment. Furthermore, the court in that case noted that the privileges and immunities of the state, not a private citizen, were being eliminated by the constitutional amendment at issue in that case. Here, however, this legislative amendment will expose private-citizen tort offenders to potentially greater financial burdens. A citizen's private rights enjoy greater protection in our constitutions than do the rights of a state. (See Fullilove Case, cited supra.).
"The 1982 legislative amendment to Article 2315 having been found to be substantive changes in the law and not susceptible of retrospective application, I conclude that the plaintiffs, Thomas Huey Ferguson and Mrs. Thomas Huey Ferguson have neither a cause nor a right of action for the consortium damages they seek herein, since the effective date of the legislative amendment which they rely on was subsequent to the acts or negligence of defendant complained of herein; and, they have not been shown to be otherwise entitled to such relief herein. Consequently, the exceptions of no cause and no right of action herein should be sustained, at the cost of plaintiffs, Thomas Huey Ferguson and Mrs. Thomas Huey Ferguson.
"* * * *"
See also: Kelly v. U.S. Fidelity & Guaranty Co., 353 So.2d 349 (La.App. 1st Cir. 1977), writ granted 354 So.2d 1383 (La. 1978), appeal dismissed 357 So.2d 1144 (La. 1978); Cruz v. Hendy Intern. Co., 638 F.2d 719 (5th Cir.C.A., La.1981); Jumonville v. Frank's Petroleum, Inc., 422 So.2d 1261 (La.App. 1st Cir.1982); Cabone v. Melba Ice Cream Co., Inc., 423 So.2d 739 (La. App. 4th Cir.1982). Prior to recent amendment, La.C.C. art. 2315 was invariably construed as barring recovery by a parent for his own mental anguish and anxiety resulting from a tort committed against his child. Mahaffey v. Official Detective Stories, Inc., 210 F.Supp. 251 (D.C.La.1962); Brauninger v. Ducote, 381 So.2d 1246 (La. App. 4th Cir.1979); Gibbons v. Orleans Parish School Board, 391 So.2d 976 (La. App. 4th Cir.1980).
We concur with the trial judge that the amendments to La.C.C. art. 2315 are not retroactive, therefore we are constrained to follow the established jurisprudence regarding consortium claims. Furthermore, *418 the appellants have cited no authority for such recovery by parents for harm done to their child emancipated by virtue of age.
For the reasons set forth hereinabove, the judgment is affirmed at appellant's cost.
AFFIRMED.