WALTZER, Judge.
Plaintiff/appellant Judy Maurice (Mrs. Maurice) appeals from a judgment by the trial court granting defendants’ motion for summary judgment[1], dismissing her claim for damages for loss of consortium arising out of the defendants’ alleged defamation of her husband, Christopher G. Maurice.
STATEMENT OF THE CASE
Mrs. Maurice and her husband brought suit to recover damages allegedly suffered by each of them caused by a false and allegedly defamatory news story broadcast on the New Orleans CBS affiliate television station, WWL-TV channel 4 (Cox Cable Channel 3) news at 10:00 p.m. on February 21, 1991. The story was subsequently re-broadcast several times on Cox Cable Channel 15. Plaintiffs allege that the defendants broadcast the false declaration that Lt. Christopher G. Maurice had been fired from the New Orleans Police Department (NOPD) that day after a police disciplinary hearing allegedly found that he tested positive for illegal drugs. Defendants admit in their answer to plaintiffs’ petition that Lt. Maurice was not terminated from the NOPD.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the.mover is entitled to judgment as a matter of law. LSA-C.Civ.P. art. 966(B).
 We recognize that in First Amendment cases, the court must review carefully on appeal the facts determined for purposes of summary judgment, to examine in depth the statements at issue and the circumstances in which they were made and to reexamine the evidentiary basis of the lower court’s decision in the light of the constitution. When a motion for summary judgment is made and supported, the plaintiff cannot rest on the allegations of the petition(s), but must set out in evidence or deposition specific facts showing that there is a genuine issue for trial. Mashburn v. Collin, et al., 355 So.2d 879 (La.1977).
The record contains extracts from depositions of defendant John Korbel and of Kor-bel’s informant, police officer Ronald Cana-tella, which plaintiffs attached as exhibits to their opposition to the defendants’ motions for summary judgment.
The defendants have not appealed from the judgment denying their motion for summary judgment seeking dismissal of the petition of Christopher Maurice. Neither do they suggest in their brief on appeal that there are no material issues of fact between defendants and Mrs. Maurice, and have apparently abandoned that contention with respect to this appeal. We therefore accept the trial court’s determination that under the appropriate standard for granting a motion for summary judgment in a case involving first amendment defenses, material facts remain at issue among the parties, and the only issue framed for this appeal is the legal issue raised below in defendants’ peremptory exceptions.
IS A CLAIM FOR LOSS OF CONSORTIUM UNDER LSA-C.C.2315 INVALID BECAUSE THE WRONGFUL ACT COMPLAINED OF IS DEFAMATION?
Defendants contend that the trial court’s judgment dismissing Mrs. Maurice’s claim is *395 properly based on the legal conclusion that damages for loss of consortium may not be awarded where defamation was the underlying damaging act. In coming to this conclusion, defendants rely heavily on two defamation eases, Coulon v. Gaylord Broadcasting, 433 So.2d 429 (La.App. 4th Cir.1983), writ denied 439 So.2d 1073 (1983) and Guglmzza v. K.C.M.C., Inc., 606 So.2d 790 (La.1992). Before beginning an analysis of the jurisprudence that is relevant to the respective positions of the parties to this appeal, civilian methodology requires that we look to the codal provision from which this litigation springs. Article 2315 of the Louisiana Civil Code, as amended by Act 202, § 1 of 1982, provides:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
“Damages may include loss of consortium, service and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.”
Among those persons who would have had a wrongful death action is the surviving spouse of the deceased person. LSA-C.C. art. 2315.1.
By the terms of the Civil Code, Mrs. Maurice may pursue her claim for loss of consortium, provided that the plaintiffs are able to prove at trial the elements of a claim for damages under the first paragraph of Article 2315. There is nothing in the text or legislative history of the codal provisions that would limit their application in defamation cases.
Defendants suggest that the mere fact that the particular “act ... of man” that gives rise to Mrs. Maurice’s claim is a defamatory act, precludes recovery of her loss of consortium damages. There is no basis for such a suggestion in the plain meaning of the statute; however, defendants contend that this Court and the Louisiana Supreme Court have carved out an exception to the loss of consortium provision in defamation cases.
Defendants rely on the opinion of the Louisiana Supreme Court in Guglmzza, supra, for this proposition. A careful review of that case demonstrates that the issue therein was quite simply whether a cause of action exists under article 2315 for defamation of a dead person. Plaintiffs sued for damages to their memory of their decedent caused by publication of a report that the decedent’s murder may have been related to his alleged gambling debts and underworld connections. The alleged defamation occurred AFTER the death of the person allegedly defamed. Plaintiffs did not claim damages for loss of consortium, but for damage to their memory of the decedent. The Court held that once a person is dead, there is no extant reputation to be injured by defamers or to be protected by the law. Since the cause of action for defamation was intended to redress injuries flowing from harm to reputation, and there was no extant reputation to be harmed at the time of the publication, the court held plaintiffs were required to show some personal damage to themselves as a result of the alleged defamation. Gugliuzza, supra at p. 791. The Court’s ruling was consistent with common law cases that prohibit a cause of action for posthumous defamation unless the defamatory communication casts a personal reflection on the plaintiff. Guglmzza, supra at p. 792.
The Supreme Court went on to deny plaintiffs’ claim that they had a separate tort action (again, not a claim for loss of consortium) based on defendants’ violation of the criminal defamation statute, LSA-R.S. 14:47(2), which prohibits the exposure of the memory of one deceased to hatred, contempt or ridicule. The issue addressed by the Court was whether this criminal statute in and of itself set a rule for civil liability. The Court held that criminal statutes may serve as guidelines for fixing civil liability, but are not definitive for that purpose, and the crime of defamation of the dead is a crime against the state, not against the decedent’s survivors. Judge Dennis’ concurring opinion notes that the criminal statute cannot be applied by analogy to create a delictual defamation right of action.
It is clear that Guglmzza does not address the issue on appeal herein, i.e. loss of consortium claim arising in connection with the defamation of a living person. Christopher *396 Maurice’s claim for damages, like Mr. Maurice himself, is very much alive, and capable of supporting the derivative claim for damages for Mrs. Maurice’s loss of consortium.
Defendants also seek solace from this Court’s opinion in Coulon, supra. Coulon, like Gugliuzza, arose out of broadcast accounts of a murder. The death of plaintiffs son was described as a “revenge” killing, and plaintiff sought damages for his own mental distress. While this case is distinguishable on the same basis as Gugliuzza, since the defamed person was dead at the time of publication of the defamatory remarks, it is further distinguishable from Mrs. Maurice’s case in that Coulon’s claim arose before the amendment of Article 2315 providing for recovery of damages for loss of consortium. At the time Coulon brought his suit, there was no civil law provision for damages for loss of consortium, so that issue was not squarely presented to the court. Thus, Coulon offers no comfort to the defendants in this case, because the opinion turned on the well-accepted principle that the dead cannot be defamed, and did not involve a claim for loss of consortium, a remedy that was not available at the time that Coulon’s claim arose.
We find the reasoning in Melancon v. The Hyatt Corporation, 589 So.2d 1186 (La.App. 4th Cir.1991), unit denied 592 So.2d 411 (La.1992), to be more compelling in the present context. In Melancon, this Court affirmed the award of damages for loss of consortium to the wife of a defamation victim.[2] Mr. Melancon was fired from his job at the Hyatt Regency Hotel upon the accusation of theft of hotel towels. This Court held that words that impute to an individual the commission of a crime are defamatory per se; malice and falsity are presumed and the burden shifts to the defendant to rebut the presumption. Defendant challenged on appeal the award of damages to the husband and of damages for loss of consortium to the wife. This Court confirmed some items of damage, and reversed the award of damages to the defamed husband for loss of reputation in the community, for failure of proof. In considering the wife’s claim for loss of consortium, the Court referred to her testimony that while her husband was unemployed, they argued constantly and did not sleep together, but they tried to “get their marriage back on track” at the time of the trial. Because the Court’s review of the jui'isprudence did not disclose any general damage awards greater than $10,000 in defamation cases, the husband’s general damage award was reduced to $10,000 and the wife’s loss of consortium award was reduced to $5,000.
We find no basis to disallow recovery of damages for loss of consortium, provided for by Article 2315, in a defamation ease in which the defamed person was alive at the time the defamatory act occurred. We believe that the contrary holding of the trial court is erroneous as a matter of law and it should be reversed.

REVERSED AND REMANDED.

WARD, J., concurs.

. Defendants contend in their appellate brief that they filed only peremptory exceptions of no right of action and no cause of action regarding Mrs. Maurice's suit. The record shows the defendants filed an answer to Mrs. Maurice’s petition on March 11, 1991, which contained no peremptory exceptions. The record shows further that the defendants filed exceptions of no right of action and no cause of action to Mrs. Maurice's petition (as well as the motion for summary judgment on which the trial judge ruled) on November 4, 1992 and these pleadings were entered on the court minutes on November 12, 1992. The judgment from which this appeal is taken, which was read, rendered and signed on May 10, 1993, grants the motion for summary judgment against Mrs. Maurice, denies defendants' motion for summary judgment against Christopher Maurice, and is silent with respect to the exceptions to Mrs. Maurice's petition filed by defendants.

. This Court approved the instructions to the jury and allowed recovery of damages for loss of consortium, reducing the damages from $25,000 awarded by the jury to $5,000.